IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:20-CV-623-FL

| | |
|---|---|
| ROCKY MOUNT FAMILY YMCA, INC., | )<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) ORDER |
| UNITED STATES FIRE INSURANCE COMPANY and THE REDWOODS GROUP, INC., | )<br>)<br>)<br>) |
| Defendants. | ) |

This matter is before the court on plaintiff's motion to remand (DE 14). The issues raised have been briefed fully, and in this posture, are ripe for ruling. For the following reasons, plaintiff's motion is granted.

## STATEMENT OF THE CASE

Plaintiff commenced this action in the General Court of Justice, Superior Court Division, Nash County, North Carolina, on October 21, 2020, asserting claims for declaratory judgment, breach of contract, bad faith, and unfair and deceptive trade acts and practices arising out of defendants' denial of insurance coverage. Plaintiff seeks declaratory relief, compensatory and exemplary damages, costs, attorneys' fees, and jury trial.

Defendants filed notice of removal in this court on November 23, 2020, asserting that plaintiff fraudulently joined defendant The Redwoods Group, Inc. ("Redwoods"), thereby allowing the court to assume diversity jurisdiction. One month later, plaintiff filed the instant

motion to remand for lack of subject matter jurisdiction. Defendants responded in opposition January 12, 2021, and plaintiff replied in support of the motion January 26, 2021.

## STATEMENT OF FACTS

The facts alleged in plaintiff's complaint may be summarized as follows. Defendant United States Fire Insurance Company ("U.S. Fire"), a subsidiary of Crum & Forster Holdings Corp ("Crum & Forster"), is authorized to conduct the business of insurance in North Carolina. (Compl. (DE 1-1) ¶ 7). Defendant Redwoods, also a Crum and Forster company, is allegedly in a joint venture with defendant U.S. Fire. (Id. ¶¶ 11-12). Defendant Redwoods administers insurance policies issued by defendant U.S. Fire and provides consulting services, training, education, and other services to defendant U.S. Fire's insureds. (Id. ¶¶ 8-10). Plaintiff, a nonprofit corporation, was issued an insurance policy by defendant U.S. Fire for the policy period from May 1, 2019, to May 1, 2020, ("the Policy"). (Id. ¶ 18).

The Policy provides business income coverage and includes a Food Contamination and Communicable Disease Coverage Endorsement ("the Endorsement"), which states in pertinent part:

> A. The following provision is added to Paragraph **5. Additional Coverages** of Section **A. Coverage:**
>
> **Food Contamination and Communicable Disease**
>
> (1) If one or more of the described premises in the above Schedule is ordered closed by the Board of Health or any other governmental authority as a result of the discovery or suspicion of "food contamination" or "communicable disease", we will pay:
>
>   (a) The loss of Business Income you sustain due to the necessary "suspension" of your "operations" as a result of the "food contamination" or "communicable disease". The coverage for Business Income will begin 24 hours after you receive notice of closing from the Board of Health or any other governmental authority;
>
> (6) For the purposes of this Additional Coverage, any exclusion of virus or bacteria in this policy does not apply.

2

(The Endorsement (DE 1-1) at 124-25). The Endorsement defined "communicable disease" as follows:

> 2. "Communicable disease" means any disease that is transmissible by infection or contagion through contact with humans or animals, or through bodily fluids, contaminated objects, airborne inhalation or a similar agent.

(Id. at 126).

On March 10, 2020, the governor of North Carolina issued Executive Order 116, declaring a state of emergency and recommending that nonessential businesses close or reduce operations due to concerns related to the COVID-19 pandemic. (Compl. (DE 1-1) ¶ 21). Shortly thereafter, the governor of North Carolina issued another executive order, closing all public schools and prohibiting mass gatherings of more than 100 people. (Id. ¶ 22).

After receiving recommendations from the president and chief executive officer of the YMCA and the Deputy Director of the Nash County Health Department that plaintiff should shut down operations, plaintiff decided to close its facilities, including its main facility at 1000 Independence Drive, Rocky Mount, North Carolina 27804 (the "Premises"). (Id. ¶¶ 23, 25). Plaintiff's insurance agent asked defendant Redwoods whether the Endorsement would provide coverage if plaintiff closed the Premises to mitigate the spread of Covid-19. (Id. ¶ 27). In a March 16, 2020, email, defendant Redwoods allegedly replied "Yes. This coverage applies if they have BI [Business Income] coverage, which they do." (Id.). Accordingly, plaintiff submitted a notice of loss to defendant Redwoods, indicating that plaintiff had experienced "loss due to the state of North Carolina's imposed restrictions related to the Coronavirus." (Id. ¶ 28).

As the Covid-19 pandemic began to accelerate in the United States, defendants allegedly realized the Endorsement could be construed to provide coverage for business income losses "in the tens of millions, if not hundreds of millions, of dollars, which U.S. Fire would be obligated to

3

pay." (Id. ¶ 42). In consequence, defendants allegedly began to take steps to dissuade and suppress any such claims under the Endorsement. (Id.). In particular, on March 20, 2020, defendant Redwoods sent an email to its insureds titled "COVID-19 Crisis Response", which stated in pertinent part:

> The Communicable Disease Endorsement is the coverage part that responds, for example, when a camp has an outbreak of norovirus and has to close for a short time to be decontaminated. In that case, the damage to the property is clear and specific to the location, as evidenced by the kids becoming sick at camp. This endorsement was not meant to respond to a community wide outbreak of an illness, but it *could* provide limited coverage for business income loss and certain extra expense related to coronavirus *under a very narrow set of circumstances*. If a scheduled location is closed by order of a government authority specifically as a result of the discovered or suspected presence of coronavirus at a scheduled location, coverage may apply.
>
> Unless all three conditions exist (the location is scheduled, the closure was ordered by civil authority and the order was specifically because of a coronavirus transmission at the site), coverage does not exist for a Business Income claim under the Communicable Disease Endorsement and, in turn, the policy.

(Email (DE 1-1) at 324).

On June 30, 2020, defendant Redwoods sent plaintiff a written denial of coverage, stating that in order for coverage to exist under the Endorsement, the scheduled premises must be closed due to "the discovery or suspected presence of communicable disease at the closed Premises." (Id. ¶¶ 32, 34). Because the documentation submitted by plaintiff "fail[ed] to support the discovered or suspected presence of communicable disease at the Premises or that the Premises was ordered to close as a result thereof", defendant Redwoods disclaimed coverage on behalf of defendant U.S. Fire. (Id. ¶¶ 32, 35). However, plaintiff alleges that the "Endorsement nowhere includes the words 'suspected presence of.' Rather, the Endorsement clearly and explicitly provides coverage for business income loss when the Premises is closed by governmental authority 'as a result of the discovery or suspicion of' communicable disease." (Id. ¶ 36) (emphasis in original).

Approximately one month later, defendant Redwoods sent an email to its insureds, indicating that it was "making changes to our coverage to create greater standardization within our parent company and our industry." (Id. ¶ 49). As relevant here, those changes included removing the Endorsement. (Id.).

## COURT'S DISCUSSION

A.  Standard of Review

In any case removed from state court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "The burden of establishing federal jurisdiction is placed upon the party seeking removal." Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994). "Because removal jurisdiction raises significant federalism concerns, [the court] must strictly construe removal jurisdiction." Id. "If federal jurisdiction is doubtful, a remand is necessary." Id.; see Palisades Collections LLC v. Shorts, 552 F.3d 327, 336 (4th Cir. 2008) (recognizing the court's "duty to construe removal jurisdiction strictly and resolve doubts in favor of remand.").

B.  Analysis

In notice of removal, defendants invoke the court's diversity jurisdiction. This court has diversity jurisdiction over civil actions "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]" 28 U.S.C. § 1332(a)(1). Importantly, "Section 1332 requires complete diversity among parties, meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant." Cent. W. Virginia Energy Co. v. Mountain State Carbon, LLC, 636 F.3d 101, 103 (4th Cir. 2011) (citing Caterpillar, Inc. v. Lewis, 519 U.S. 61, 68 (1996)). A corporation is a citizen

5

of the state in which it is incorporated and of the state in which it maintains its principal place of business.  See id. § 1332(c)(1); Hertz Corp. v. Friend, 559 U.S. 77, 80– 81 (2010).

Plaintiff and defendant Redwoods are both citizens of North Carolina, (see Compl. (DE 1-1) ¶¶ 6,8; Not. of Rem. (DE 1) ¶¶ 7, 9), and thus, complete diversity is lacking.  Defendants argue, however, that defendant Redwoods's citizenship must be disregarded for diversity purposes because it was fraudulently joined in this action.  "[T]he fraudulent joinder doctrine provides that diversity jurisdiction is not automatically defeated by naming non-diverse defendants."  Weidman v. Exxon Mobil Corp., 776 F.3d 214, 218 (4th Cir. 2015).  The doctrine "effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction."  Johnson v. Am. Towers, LLC, 781 F.3d 693, 703–05 (4th Cir. 2015) (quoting Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir.1999)).

Invocation of the fraudulent joinder doctrine is appropriate only where "there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or . . . there has been outright fraud in the plaintiff's pleading of jurisdictional facts.  Marshall v. Manville Sales Corp., 6 F.3d 229, 232–33 (4th Cir. 1993) (emphasis in original) (internal citations omitted).  "[U]ltimate success is not required to defeat removal.  Rather, there need be only a slight possibility of a right to relief.  Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends."  Hartley v. CSX Transp., Inc., 187 F.3d 422, 426 (4th Cir. 1999) (citing Marshall, 6 F.3d at 233).

"The party alleging fraudulent joinder bears a heavy burden—it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor."  Id. at 424.  "In order to determine whether an attempted joinder is fraudulent, the court is not bound

6

by the allegations of the pleadings, but may instead 'consider the entire record, and determine the basis of joinder by any means available.'" AIDS Counseling & Testing Ctrs. v. Grp. W Television, Inc., 903 F.2d 1000, 1004 (4th Cir. 1990) (quoting Dodd v. Fawcett Publ'ns, Inc., 329 F.2d 82, 85 (10th Cir. 1964)).

In support of their fraudulent joinder argument, defendants contend that plaintiff cannot maintain a breach of contract claim against defendant Redwoods because defendant Redwoods is not a party to the Policy. However, plaintiff contends that defendant Redwoods is liable under the Policy because it is in a joint venture with defendant U.S. Fire. As explained by the North Carolina Supreme Court, a joint venture is:

> an association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill, and knowledge, but without creating a partnership in the legal or technical sense of the term.
>
> Facts showing the joining of funds, property, or labor, in a common purpose to attain a result for the benefit of the parties in which each has a right in some measure to direct the conduct of the other through a necessary fiduciary relation, will justify a finding that a joint adventure exists.
>
> To constitute a joint adventure, the parties must combine their property, money, efforts, skill, or knowledge in some common undertaking. The contributions of the respective parties need not be equal or of the same character, but there must be some contribution by each coadventurer of something promotive of the enterprise.

Cheape v. Town of Chapel Hill, 320 N.C. 549, 561 (1987) (quoting Pike v. Wachovia Bank & Tr. Co., 274 N.C. 1, 8 (1968)). "One of the elements of a joint venture on which most, if not all, jurisdictions agree is that each party to a joint venture has a right in some measure to direct the conduct of the other through a necessary fiduciary relationship." Id. at 562. This means that "each joint venturer [must] stand in the relation of principal, as well as agent, as to each of the other coventurers." Id. (internal citation omitted).

Here, plaintiff alleges that defendant Redwoods administers insurance policies with defendant U.S. Fire and other Crum and Forster underwriters. (Compl. (DE 1-1) ¶ 9). In addition to serving as authorized claims administrator for defendant U.S. Fire, defendant Redwoods allegedly provides consulting services, training, education and other services to defendant U.S Fire's insureds. (Id. ¶ 10). Moreover, defendant Redwoods "extensively markets" these services to YMCA member organizations in order to lower claims costs and keep insureds doing business with defendant U.S. Fire and other Crum & Forster companies. (Id.). Finally, plaintiff alleges that defendant Redwoods drafted and interpreted the language of the Endorsement in the Policy. (Id. ¶¶ 39-49); (Mem. (DE 15) at 6-7). Construing the record in plaintiff's favor, plaintiff possesses at least a "glimmer of hope" that defendants are engaged in a joint venture, which subjects defendant Redwoods to liability for the same claims against defendant U.S. Fire. Hartley, 187 F.3d at 426.

Defendants argue that no North Carolina court has extended the joint venture doctrine in the context of a claims administrator and an insurer. Notably, however, defendants have not identified any North Carolina case addressing this issue, the novelty of which weighs against a finding of fraudulent joinder. Hartley, 187 F.3d at 425 ("Because all legal uncertainties are to be resolved in the plaintiff's favor in determining whether fraudulent joinder exists, a truly 'novel' issue such as this cannot be the basis for finding fraudulent joinder."). In light of this novelty, the fact that, unlike other cases involving a joint venture, here both parties to the alleged joint venture deny its existence, is not determinative. Moreover, plaintiff has identified out of state authority finding a claims administrator and an insurer to be involved in a joint venture, where they shared profits and where the claims administrator "developed promotional material, issued policies, billed and collected premiums, paid and adjudicated claims, and assisted [the insurer] in the development of the ancillary charges limitation provision." Albert H. Wohlers & Co. v. Bartgis, 114 Nev. 1249,

8

1263 (1998). While Albert is not binding on North Carolina courts, it at least shows possibility of relief. Cf. Hartley, 187 F.3d at 425 ("The very fact that courts may differ in their resolutions of this issue shows there is a possibility of recovery.").

Defendants also argue that the complaint is devoid of allegations of profit sharing or of defendant Redwoods's right to control defendant U.S. Fire, and it cites several cases dismissing claims premised on a joint venture theory of liability, where those elements are lacking. Regarding defendant Redwoods's control over defendant U.S. Fire, plaintiff alleges that defendant Redwoods drafted and interpreted the Endorsement, exerting control over U.S. Fire's coverage obligations. (Compl. (DE 1-1) ¶¶ 39-49; Mem. (DE 15) at 6-7). Moreover, plaintiff argues the sharing of profits can be inferred from defendant Redwoods's attempts to lower the cost of claims, in order to keep insureds doing business with defendant U.S. Fire, as well as defendant Redwood's stated concern over Covid-19's impact on the insurance industry, and its subsequent alleged attempts to dissuade and suppress claims made under the Endorsement. (Compl. (DE 1-1) ¶¶ 10,42; Mem. (DE 17) at 3). Viewing these issues of fact in plaintiff's favor, plaintiff has demonstrated at least a "glimmer of hope" that defendants are involved in a joint venture.[1] See Hartley, 187 F.3d at 426 ("Ultimate success is not required to defeat removal."). Accordingly, the fraudulent joinder doctrine is inapplicable, and remand is required.

## CONCLUSION

Based on the foregoing, plaintiff's motion to remand (DE 14) is GRANTED. This case is REMANDED to the General Court of Justice, Superior Court Division, Nash County, North Carolina, for further proceedings. The clerk is DIRECTED to transmit a certified copy of this

---

[1] Having determined that defendant Redwoods was not fraudulently joined, on the basis of a joint venture theory of liability, the court does not reach the parties' arguments regarding plaintiff's other causes of action against defendant Redwoods.

9

order to the clerk of the General Court of Justice, Superior Court Division, Nash County, North Carolina, and to file in this case a copy of the clerk's transmittal letter with certified copy of the instant order. The clerk is further DIRECTED to close this case.

SO ORDERED, this the 1st day of April, 2021.

_____
LOUISE W. FLANAGAN
United States District Judge